STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-04-068

PA? - Y \ - 1/23 06

MICHAEL LEONARD and
LORRAINE WORTHINGTON,

Plaintiffs

v.

ORDER

TOWN OF KITTERY and
KITTERY PORT AUTHORITY,

Defendants

This case comes before the Court on Michael Leonard's 80B appeal of the Town of Kittery's denial of a request to add a six-foot by twenty-foot finger float to an existing dock, ramp, and float system. Following hearing, the Town's decision is Affirmed.

## FACTUAL BACKGROUND

In 2000, Mr. Leonard petitioned the Kittery Port Authority (KPA) for a permit to construct a fifty-five foot L-shaped commercial float in the waters referred to as Back Channel. His stated purpose for the float was to dock a forty-foot boat of a friend and another smaller boat. After two public meetings on July 6, 2000, and August 3, 2000, the KPA approved Mr. Leonard's permit. The minutes from the meetings indicate that the board was concerned about the length of the float and parking spaces on land. Although there was discussion about Mr. Leonard docking two boats at his float, the KPA did not condition the approval on only two boats being docked at the float. Since that time, Mr. Leonard has allowed up to five boats to dock at his float.

In 2004, Mr. Leonard again petitioned the KPA to add on a six-foot by twenty-foot finger float on the inside of the L-shaped float. His stated purpose for doing so is to increase the safety at his float by having another docking option depending on currents and winds. The minutes from the meetings indicate that the KPA was concerned that there were now five boats docking at the float. The board members noted that the current use of the float has evolved and is not what was presented to the board for the original float in 2000. Some of the board members were of the opinion that the 2001 permit was conditioned on Mr. Leonard docking two boats on his float.

On August 12, 2004, the KPA denied the permit because it found that the proposed finger float would cause an additional safety hazard in trying to maneuver in that area and the fact that the current application showed five boats when the board had been given the impression that the float was to be used for two boats. The KPA noted that the findings were supported by testimony of a neighbor that the waters in this area are difficult and dangerous to navigate, and opinions of the board members to the same effect.

On August 16, 2004, Mr. Leonard filed a motion for reconsideration. Mr. Leonard was represented by Attorney Libby at the hearing on reconsideration. Attorney Libby asked if the finger pier would affect safety. Chairman Hall responded that the hazard lies with inexperienced boaters, and that a six-foot pier could punch a hole in a boat having navigational problems. The other board members opined that the waters were rough in that channel and that the six-foot finger float would create congestion making navigation difficult. However, Chairman Hall acknowledged that the KPA does not regulate the number of boats docked at each pier. The request for reconsideration was denied on September 8, 2004. Thirty days later, on November 10, 2004, Mr. Leonard filed this 80B appeal in the Superior Court.

2

Mr. Leonard argues that the KPA's findings are 1) unsupported by substantial evidence in the record; 2) inconsistent with the Kittery Comprehensive Plan; and 3) inconsistent with the requirements of 38 M.R.S.A. § 1002.

## DISCUSSION

The Superior Court reviews the findings of the Kittery Port Authority "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Yusem v. Town of Raymond*, 2001 ME 61, ¶7, 769 A.2d 865, 869. As the party seeking to overturn the KPA's decision, Mr. Leonard has the burden of establishing that the evidence compels a contrary conclusion. *Herrick v. Town of Mechanic Falls*, 673 A.2d 1348, 1349 (Me. 1996).

Mr. Leonard first contends that the KPA relied on an improper factor, the number of boats on the float. Second, Mr. Leonard contends that there is no evidence in the record to support a finding that a northwesterly wind blowing with ebb tide would affect the safety of the proposed finger float.[1] Mr. Leonard further argues that the ordinance does not contain provisions, rules, or regulations that allow the KPA to deny permits solely for safety concerns. Thus, because the safety standards utilized were not articulated, the KPA's actions constitute an unconstitutional delegation of legislative authority in violation of the due process clause. See *Kosalka v. Town of Georgetown*, 2002 ME 106, ¶ 17, 752 A.2d 183, 187. Lastly, Mr. Leonard argues that KPA's decisions violated the Kittery Comprehensive Plan and the Kittery Land Use Development Code, which encourage building more wharfage in Back Channel because it is considered "safe."

The Town contends that the 2004 denial was based on the safety of the finger float

[1] The Kittery Comprehensive Plan establishes that the prevailing winds in the Back Channel area tend to be from the north and northeast during the winter and from the southwest during the summer.

alone. It maintains that the record supports the KPA's finding. The Town argues that the law in Maine is established that personal knowledge of a board member, when competent, may be considered by members of the board when reaching a decision. See *Lippoth v. Zoning Board of Appeals, City of So. Portland*, 311 A.2d 552, 557 (Me. 1973).

The KPA denied the permit after finding that the proposed finger float would cause an additional safety hazard in trying to maneuver in that area with a northwesterly wind blowing with the ebb tide. Although Mr. Leonard argues that the KPA does not have the explicit authority to consider safety, the fact that it is statutorily bound to consider whether the proposed construction would obstruct navigation or injure the rights of others necessarily involves an evaluation of safety concerns. 38 M.R.S.A. §1022. The KPA properly considered safety as a factor.

While it would be error to deny this permit on the basis that the 2001 permit limited docking to only two boats, it is appropriate for the board to consider the actual, present usage of this facility when evaluating safety issues as they relate to the pending permit application.

The real inquiry here is whether the record supports a finding that the proposed finger float will, in fact, adversely affect safety, obstruct navigation or create a risk of injury to the rights of others, 38 M.R.S.A. §1022, and whether the KPA's findings of fact are adequate to permit effective appellate review of that finding. In my view, these are both close questions.

The record consists of the documentary and photographic evidence submitted, the testimony of witnesses and the personal knowledge of the board members themselves as articulated at hearing. The KPA evaluated this evidence and concluded that the proposal created unacceptable safety concerns. A review of the record does not compel a contrary result.

The KPA's findings of fact are more problematic. A local board must do more than merely state it conclusions; it must state the basic facts upon which its conclusions are based. Here, the KPA articulates seven facts upon which its conclusion is based:

A. This area is considered Unsafe for boats trying to dock due to strong NW'ly winds and strong currents.

B. Due to the congested area the float would create an unsafe navigational system.

C. Testimony from board members in 2001.

D. Sect. VIII (Port Authority Rules) Where the requirements of these Rules and Regulations are in conflict with other laws or rules, the more restrictive, or that imposing the higher standard, shall govern

E. Testimony given by abutter as to dangerous area and confirmed by Harbor Master.

F. Float system approved originally as a walkway to put float out to deeper water for fishing boat.

G. Comprehensive Harbor Plan reference was mostly from the old Plan of 1989.

Of these, "C", "D"and "G" are essentially conclusory, "C" states: "Testimony from board members in 2001." What testimony, and how does it bear on the pending application? "D" refers to Sect. VIII, Port Authority Rules requiring that when these rules conflict with other land use regulations, the most restrictive apply. Are there conflicting rules in this case; which rules were applied? "G" refers to the issue of whether Mr. Leonard was using an out-of-date Harbor Plan to support the application. Was this accurate, if so, were there any material differences with the current plan? If these were the only findings made by the KPA, I would remand the case to the KPA.

However, findings "A", "B", "E" and "F" are minimally adequate to permit judicial review. The findings relating to over-congestion and potentially dangerous hazards to navigation are supported by the testimony of an abutter, the Harbor Master

and the general knowledge of the board members. It is not for the reviewing court to second-guess these judgments.

I realize that local boards rely on volunteers who dedicate long hours to the often thankless task of applying complicated ordinances in disputed cases. However, it is now clear that our Supreme Court will insist on more thorough findings of fact at the local administrative level. Ideally, municipalities would make legal counsel available to volunteer boards to assist them in this task. In the long run, this would likely be more efficient and less expensive for all involved. However, in the absence of this kind of assistance, the boards themselves must strive to provide detailed and comprehensive findings of fact or face the prospect of frequent remands.

The entry will be as follows:

Plaintiffs' Rule 80B appeal is Denied and the decision of the Kittery Port Authority is Affirmed.

Dated:      January 19, 2006

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
Gene Libby, Esq.
VERRILL AND DANA
PO Box 147
Kennebunk Me 04043

DEFENDANTS:
Duncan McEachern, Esq.
MCEACHERN AND THORNHILL
PO Box 360
Kittery Me 03904